**IN THE UNITED STATES DISTRICT COURT**

**TERRITORY OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ANTONIO ARTERO SABLAN, ) <br> Individually and as Chairman of the Board ) <br> and President of Urunao Beach Corp dba ) <br> JUNGLE TOURS, and URUNAO BEACH ) <br> CORP., ) <br> Defendants. ) | CIVIL CASE NO. 93-00041 <br><br> **MEMORANDUM DECISION AND ORDER DENYING MOTION TO REOPEN CASE** |

**I.  INTRODUCTION**

Before the court is a motion by Melvia Artero Cafky and Anthony M. Artero (collectively "Movants") to reopen this case. (Motion to Reopen Case ("Motion"), filed July 16, 2013, ECF No. 44.) Movants are not parties to the litigation, but they claim to be intended third-party beneficiaries of a consent decree entered into by the parties in 1994, and as such to have standing to ask the court to clarify the decree's terms. Plaintiff United States opposes the Motion. Defendants Antonio Artero Sablan ("Sablan") and Urunao Beach Corporation ("Urunao Beach") have not filed responsive briefs or taken a position on the Motion. The matter came on for a hearing on March 20, 2014. Having carefully considered the oral and written arguments of counsel, and having reviewed the briefs, affidavits, and exhibits submitted by Movants and Plaintiff, the court denies the Motion to Reopen Case, for the reasons set forth herein.

## II.     BACKGROUND

a.   *The 1994 Consent Decree*

In 1993, the United States sued Defendants Sablan and Urunao Beach for trespass, alleging that Defendants had damaged federal woodlands by unlawfully cutting a roadway through Lot 10081-2 in the Guam National Wildlife Refuge ("Refuge") to Defendants' property in Lot 10080 and by driving tour buses over it, further damaging the ecosystem. (See Complaint, ECF 1.) Defendants asserted a right of easement by necessity. (See Consent Decree ¶ 7.) A previous judgment in a separate case, *United States v. 602,321 Square Meters of Land*, Civil Case No. 29-62 (D. Guam), had expressly reserved a right of way across the Refuge's Lot 10081-2 to Lot 10081-1, which was owned by Maria Taitano Aguero and Juan San Nicolas Aguero. (See Consent Decree ¶ 6.) That case did not, however, expressly reserve a right of way or other access to Defendants' property in Lot 10080. (*Id.* ¶ 7.)

In April 1994, the Government and Defendants entered into a Consent Decree that established a right of way for Defendants across the Refuge to Lot 10080. The parties agreed to route the right of way along the existing road, as shown on an attached map. (*Id.* ¶ 9.) The width of the right of way was restricted to 20 feet along one section of the route and 10 feet along the remainder. (*Id.* ¶ 13.) Defendant agreed to stop clearcutting timber and storing earthmoving equipment along the roadway. (*Id.* ¶ 10.)

The only parties to the Consent Decree were the U.S. Government and Sablan and Urunao Beach, of which Sablan was board chairman and president. Other landowners are mentioned in two paragraphs. Plaintiff agreed to "endeavor in good faith to resolve with affected landowners the other access issues concerning the Guam National Wildlife Refuge including, but not limited to, reviewing any proposal to improve said right-of-way by any interested party, and including

exploration of an easement for the Territory of Guam . . ." (*Id.* ¶ 15.) It was further agreed that the Consent Decree "shall not release Plaintiff, Defendants, the Territory of Guam or other owners of Lot Nos. 10080 or 10081-1" from various obligations imposed by federal, state, or local law. (*Id.* ¶ 16.)

The District Court of Guam retained jurisdiction "for the express purpose of enabling any party to this Decree to apply to this Court for such further orders and directions as may be necessary or appropriate" to construe, modify, or enforce the Decree. (*Id.* ¶ 18.) It was agreed that "[t]he provisions of this decree shall apply to and be binding upon Defendants ANTONIO ARTERO SABLAN and URUNAO [*sic*] BEACH CORP., and upon all firms, corporations, agents, successors or assigns of the Defendants, and upon Plaintiff and its officers, agencies, and employees." (*Id.* ¶ 5.)

In September 1994, a few months after entry of the Consent Decree, Chief Judge John S. Unpingco called an off-the-record conference to which he invited "various family members" to discuss the possibility of building an access road to allow "continuous and ready access" to "the Artero property" along a beach route that during high tide was partially submerged. (Notes of Conference, Sept. 27, 1994, ECF No. 43.) The participants included many Artero family members who were not named defendants in the lawsuit. One of the participating family members, Movant Melvia Artero Cafky ("Cafky"), "expressed her dissatisfaction with the way this case was handled." (Notes of Conference, pp. 4–5.) The notes of this conference are the last recorded activity in the case for nearly 20 years.

b. *The 2013 Motions to Reopen and Clarify the Consent Decree*

In July 2013, Cafky and Anthony M. Artero ("Artero") moved, as interested parties, to reopen the case. Separately, Cafky and Artero moved for "clarification" of the Consent Decree "as

3

to the permissible use of the ROW [right of way]." (Motion for Clarification and Memorandum of Points and Authorities, ECF No. 45, p. 1.)

Cafky and Artero are owners of property within Lot 10080. In 2011, Cafky applied to the U.S. Fish and Wildlife Service ("FWS") for a special-use permit to bring heavy equipment over the right of way to clear, level, and grade on her property. (Motion for Clarification, p. 4.) Her application was denied. (*Id.*) In 2013, Artero applied for a special-use permit to remove aggregate from his property that was left there (he says) by the U.S. Government after cleanup of military dump sites. (*Id.*, pp. 4–5.) Artero's application was denied. (*Id.*) Administrative appeals of these denials were unsuccessful. (*Id.*) Cafky and Artero assert that their use of the right of way is consistent with the Consent Decree and seek a declaration from the Court to that effect. They assert standing as "interested parties" to the Consent Decree. (Motion ¶ 2.)

The Government opposes the Motion. It asserts that to have standing to enforce a consent decree, it is not enough for a third party to be an intended beneficiary of the decree. Rather, the parties to the decree must have intended to give the third-party beneficiaries a "legally binding and enforceable right to the benefit." (Opp'n, p. 3, quoting *United States v. FMC Corp.,* 531 F.3d 813, 821 (9th Cir. 2008)). The Government maintains that the 1994 Consent Decree did not give nonparty family members like Cafky and Artero an enforceable right.

Movants reply that as property owners within Lot 10080 who actively participated in the negotiation and implementation of the Consent Decree, they were intended beneficiaries. (Reply 1–2.) They read the case law as prohibiting only incidental beneficiaries from enforcing a consent decree and as not requiring that intended beneficiaries be identified by name, so long as they are within the class intended to receive the benefit. (*Id.* 2–3, 6.) They assert that the Consent Decree does not expressly limit enforcement rights to the parties. (*Id.* 3.) They point to terms in the

Consent Decree which, in their view, show an intent to benefit all property owners within Lot 10080: Plaintiff's covenant to work with "affected landowners" and "any interested party to resolve other access issues (Consent Decree ¶ 15), and a non-release term that expressly refers to "other owners of Lot Nos. 10080 and 10081-1 (*id.* ¶ 16). Additional evidence of intent, according to Movants, is: (1) one of the claims that the Consent Decree expressly settled (*id.* ¶ 9) was a claim of an easement "for the benefit of Lots 10081 and 10080" (Reply 4, quoting Defendant's Answer, Dkt. No. 7); (2) the United States engaged in post-Decree discussions with affected landowners; and (3) the Superior Court of Guam found, in *Artero v. Artero* (CV-263-97, Decision and Order, Feb. 10, 2000), that Defendant Sablan had expended funds to open the roadway for the benefit of all the landowners (Reply 4–5).

### III. DISCUSSION

A motion to modify a consent decree is proper under Rule 60(b)(5) of the Federal Rules of Civil Procedure. *See United States v. Asarco Inc.,* 430 F.3d 972, 976 (9th Cir. 2005). In a very narrow set of circumstances, intended third-party beneficiaries may enforce a consent decree. The general rule, however, is against finding third-party enforcement rights: "[A] well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750 (1975).

In *Blue Chip Stamps,* under the terms of an antitrust consent decree the "Old Blue Chip" Stamp Company agreed to form "New Blue Chip" and to offer shares in New Blue Chip to retailers who had used Old Blue Chip's stamps. *Id.* at 725–26. A retailer brought an SEC Rule 10b-5 action alleging that Old Blue Chip had prepared a misleading prospectus intended to discourage qualifying retailers from purchasing stock in New Blue Chip. *Id.* at 726–27. Under

the so-called "Birnbaum rule," only actual purchasers and sellers of securities have a private right to bring a 10b-5 action. *Id.* at 730–31 (citing *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2nd Cir. 1952)). Courts had carved out an exception from operation of the Birnbaum rule for persons who owned a contractual right (such as an option) to buy and sell a security. *Id.* at 749–50. The Ninth Circuit found that the retailer's "status as an offeree pursuant to the terms of the consent decree served the same function" as ownership of a contractual right, and extended the Birnbaum rule to allow the retailer the right to sue. *Id.* The Supreme Court reversed, holding that a quasi-contractual right to purchase does not confer a private right to sue under 10b-5. *Id.* at 755. The Court noted that neither the Ninth Circuit nor the retailer asserted that the consent decree actually conferred a contractual right on the retailer, who was not a party to the consent decree. *Id.* at 750.

The Ninth Circuit read *Blue Chip Stamps* to prohibit "only *incidental* third party beneficiaries from suing to enforce a consent decree." *Hook v. State of Ariz., Dept. of Corrections,* 972 F.2d 1012, 1015 (9th Cir. 1992) (original emphasis). In *Hook,* 265 inmates filed suit to enforce a 17-year-old consent decree regarding prison mail regulations. *Id.* at 1013. None of those inmates had been a party to the consent decree. *Id.* The Ninth Circuit held that the inmates had standing to sue to enforce the consent decree. *Id.* at 1015. It distinguished *Blue Chip Stamps* on the narrow grounds that there, the United States Government was a party to the consent decree, and it was well settled that "[o]nly the Government can seek enforcement of its own consent decrees." *Id.* (quoting *Dahl, Inc. v. Roy Cooper Co.,* 448 F.2d 17, 20 (9th Cir. 1971)). Under contract law principles applicable to consent decrees, third-party beneficiaries of a Government contract are "assumed to be only incidental beneficiaries and are precluded from enforcing the contract absent a clear expression of a different intent." *Id.* The court also observed

that strict adherence to *Blue Chip Stamps* would "eviscerate" Rule 71, which gives nonparty beneficiaries of a court order the same means to enforce the order as a party has at its disposal. *Id.* It found that the prison consent decree was intended to benefit all inmates, not just those who had brought the original lawsuit. *Id.* It therefore found that the 265 prisoners had standing to move to reopen the case. *Id.*

In the context of a land use dispute, the Ninth Circuit declined to hold that *Hook* opened the door to a suit by intended third-party beneficiaries where (1) the Government was a party aligned with nonparty beneficiaries and (2) the consent decree contained "no clear intention" to confer a right of action on third-party beneficiaries. *United States v. FMC Corp.,* 531 F.3d 813 (9th Cir. 2008). In *FMC Corp.,* the U.S. Environmental Protection Agency ("EPA") and the Shoshone-Bannock Tribes ("the Tribes") approached FMC Corporation ("FMC") about possible violations of federal and tribal environmental laws arising from FMC mining operations on land within the Tribes' reservation. *Id.* at 815. The Government sued FMC, and the district court allowed the Tribes to intervene and present objections to a proposed consent decree between FMC and the Government. *Id.* The consent decree mentioned the Tribes frequently – for example, it permitted the Tribes to have limited access to FMC's plant and to receive technical reports from FMC upon request – but identified as "parties" only the United States and FMC. *Id.* at 816. Paragraph 77 expressly stated that "[n]othing in this Consent Decree is intended either to create any rights in or grant any cause of action to any person not a party to this Consent Decree[.]" *Id.* at 821. The Ninth Circuit held that the intent apparent in Paragraph 77, in conjunction with the presumption against third-party rights to enforce government consent decrees, deprived the Tribes of standing. *Id.* at 821–22.

The facts of *FMC Corp.* mainly cut against Movants' position. Although the 1994 Consent Decree does not expressly define "parties," it does state that "[t]he provisions of this decree shall apply to and be binding upon Defendant's ANTONIO ARTERO SABLAN and URUANO [*sic*] BEACH CORP., and upon all firms, corporations, agents, successors or assigns of the Defendants, and upon Plaintiff and its officers, agencies, and employees." (Consent Decree ¶ 5.) Movants are not in this class. It also contains an enforcement provision that limits the court's jurisdiction so as to "enabl[e] any *party* to this Decree to apply for such further orders and directions as may be necessary or appropriate . . . for the modification or termination of any provision, or *for enforcement or compliance therewith.*" (Consent Decree ¶ 18, emphasis added.) Movants did not sign the Consent Decree; the only signatories are "Attorney for Defendants" and the U.S. Attorney – i.e., the parties' representatives. Although other landowners of Lots 10080 and 10081 are mentioned twice in the Consent Decree (¶¶ 15 and 16), they are not given a concrete benefit. In ¶ 15, the United States merely agreed to work with them and other stakeholders in good faith to resolve other access issues, while ¶ 16 only clarifies the limits of the Consent Decree. In contrast, in *FMC Corp.,* the Tribes received actual, tangible benefits from the consent decree, yet still even those benefits were not enough to confer standing.

Movants assert that a crucial factor in the court's ruling in *FMC Corp.* was that "the consent decree at issue took pains to spell out that third parties did not have a right to enforce the consent decree" (Reply 3), and that the 1994 Consent Decree has no such explicit language. In *FMC Corp.,* the court rejected the policy argument that where a consent decree grants substantive rights to a third party, the grant must implicitly include a right of enforcement. *FMC Corp.,* 531 F.3d at 323. "When a consent decree or contract explicitly provides that a third party is not to have enforcement rights, that third party is considered an incidental beneficiary even if

the parties to the decree or contract intended to confer a direct benefit upon that party." *Id.* (quoting *SEC v. Prudential Sec. Inc.,* 136 F.3d 153, 159 (D.C. Cir. 1998)). Movants are correct that the 1994 Consent Decree, unlike the consent decree in *FMC Corp.,* does not unequivocally exclude third party beneficiaries from enforcing its terms. But if ¶ 18 is given its plain meaning, it cannot be construed to permit anyone *but* "any party to this Decree" to enforce it. This conclusion is supported by the fact that, on its face, the Consent Decree does not recognize the right of Movants or anyone other than Defendants Sablan and Urunao Beach to use the roadway. "The parties recognize that *defendant* has an undivided interest in Lot No. 10080; *Defendant* desires a suitable route of ingress and egress to Lot No. 10080 and has alleged a right of easement by necessity and other rights of passage to Lot No. 10080 . . ." (Consent Decree ¶ 7, emphasis added.) Movants want the court to read into the Consent Decree not only a right of enforcement but also the substantive rights they wish to enforce. The case law does not support the outcome they seek.

Movants rely on *County of Santa Clara v. Astra USA, Inc.,* 588 F.3d 1237, 1244–45 (9th Cir. 2009), *reversed on other grounds by Astra USA, Inc. v. Santa Clara County,* 131 S.Ct. 1342 (2011), for the proposition that an intended third-party beneficiary has a right to enforce a contract even if the contract does not expressly grant a right to sue. (Reply at 3.) In *County of Santa Clara,* the Ninth Circuit stated: "[W]e reject the suggestion that the availability of a third party contract claim is conditioned on the contract's inclusion of a provision expressly granting the third party the *right to sue.* Any intended beneficiary has the right to enforce the obligor's duty of performance; the right to sue inheres in one's status as an intended beneficiary." *County of Santa Clara,* 588 F.3d at 1244. The problem for Movants is that *County of Santa Clara* involves a contract (a pharmaceutical pricing agreement), not a consent decree. True, ordinary

contract principles generally apply to the interpretation of consent decrees. *See Wicker v. Oregon,* 543 F.3d 1168, 1173–74 (9th Cir. 2008). However, that does not mean that a consent decree is the same as a contract. A consent decree "has attributes of a contact and a judicial act[.]" *Washington v. Penwell,* 700 F.2d 570, 573 (9th Cir. 1983). The Supreme Court has consistently rejected the argument "that a decree entered upon consent is to be treated as a contract and not as a judicial act[.]" *System Federation No. 91 Railway Employees' Dep't v. Wright,* 364 U.S. 642, 651 (1961) (quoting *United States v. Swift & Co.,* 286 U.S. 106, 115 (1932)). The line of cases from *Blue Chip Stamps* to *FMC Corp.* shows that the right of third parties to enforce a consent decree is much narrower than their right to enforce a contract. Absent a clear expression of an enforcement right, third parties who benefit from a consent decree typically will be considered only *incidental* beneficiaries, not intended ones.

One factor that distinguishes the case at bar from *FMC Corp.* favorably for Movants is that the Government, although a party to the Consent Decree, is adverse to Movants. When the Government is aligned with nonparty beneficiaries, there is at least a presumption that the nonparties are only incidental beneficiaries. *See FMC Corp.,* 531 F.3d at 821; *see also Hook,* 972 F.2d at 1015 ("In contract law, third party beneficiaries of *the government's rights* under a contract are normally assumed to be only incidental beneficiaries and are precluded from enforcing the contract absent a clear expression of a different intent.") (emphasis added). Thus, Movants at least do not have to overcome a presumption against third-party enforcement.

Unfortunately for Movants, their other evidence of an intent to benefit "other landowners" does not add up to an intent to give them a right to enforce the 1994 Consent Decree. When ¶ 9 says that the Consent Decree "fully satisfies … any alleged claim of easement of necessity or other claim of right of passage," clearly it refers to any claim by a *party,* not

possible claims by nonparties. Other landowners' participation in post-Decree conferences (albeit under the auspices of the court) is far less *post hoc* involvement than the Tribes enjoyed after the *FMC Corp.* consent decree, which entitled them to access to the plant and gave them a right to request documentation. *See FMC Corp.,* 531 F.3d at 816. Finally, the Superior Court's finding in *Artero* (2000) that Mr. Sablan undertook improvements in the roadway to benefit all landowners says nothing about the intent of the parties when they entered into the Consent Decree six years earlier.

Movants liken themselves to the prisoner claimants in *Hook,* who were not parties to the original action. This analogy has some merit. All inmates in the Arizona prison will have benefited from the mail privileges that the prisoners who brought the lawsuit secured. Similarly, other landowners will have benefited in some degree from Sablan and Urunao Beach's right of way. On the other hand, movant prisoners may be seen as successors in interest to the rights that party prisoners obtained, whereas movant landowners are not successors – if they were, they would have enforcement rights, as expressly granted in ¶¶ 5 and 18 of the Consent Decree). Movant prisoners were not incarcerated at the time the original action was brought; in contrast, movant landowners already owned their rights at the time of the original action and could have intervened. Not that intervention alone would have secured for Movants an enforcement right – in *FMC Corp.* the Tribes had intervened. But intervention would have afforded them the opportunity to participate formally in the litigation and become signatory parties to the Consent Decree.

**IV. CONCLUSION**

The court finds that Movants are incidental beneficiaries of the 1994 Consent Decree and that as such, they have no standing to petition the Court to modify or enforce it. For this reason,

the Movants' Motion to Reopen Case (ECF No. 44) is DENIED. Movants' Motion for Clarification (ECF No. 45) is DENIED AS MOOT. As this order disposes of a motion for relief under Rule 60 of the Federal Rules of Civil Procedure, a separate document setting out the judgment is not necessary. *See* Fed. R. Civ. P. 58(a)(5).

SO ORDERED this 14th day of April, 2014.

_____
Ramona V. Manglona
Chief Judge, District of the Northern Mariana Islands, sitting by designation